UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

    Plaintiff,

v.

MATTHEW PENALOZA,

    Defendant.
_____/

File No. 1:12-cr-132

HON. JANET T. NEFF

# **O P I N I O N**

Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, filed by Defendant Matthew Penaloza (ECF No. 1802). The Government has filed a response to the motion (ECF No. 1829). For the reasons herein, the motion will be denied.

## **I. Background**

In February 2013, the Government charged Defendant and 30 other members of a group called the Holland Latin Kings with conspiring to participate in a criminal enterprise. In July 2013, the Government filed a superseding indictment naming Defendant in the following counts: Count One, participation in a racketeering conspiracy, 18 U.S.C. § 1962(d); Count Twelve, conspiracy to commit assault with a dangerous weapon in aid of racketeering, 18 U.S.C. § 1959(a)(6); Count Thirteen, conspiracy to use a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 371, 924(c); Count Fifteen, conspiracy with intent to distribute and to distribute 100 kilograms or more of marijuana, 18 U.S.C. §§ 846, 841(a), and 841(b)(1)(B)(vii); and Count Sixteen, conspiracy with intent to distribute and to distribute 100 kilograms or more of

marijuana, 18 U.S.C. §§ 846, 841(a), and 841(b)(1)(B)(vii). (Fourth Superseding Indictment, ECF No. 480.)

In October 2013, Defendant agreed to plead guilty to Counts One and Sixteen in exchange for the dismissal of Counts Twelve, Thirteen, and Fifteen. (Plea Agreement, ECF No. 681.) He entered his plea on October 23, 2013, in a hearing before United States District Judge Robert Holmes Bell.

Prior to sentencing, the probation officer prepared a Presentence Investigation Report (PIR) scoring Defendant with an adjusted offense level of 31 and a criminal history score of VI, resulting in a guideline sentencing range of 188 to 235 months in prison. (PIR, ECF No. 891, PageID.6432.)

The Government and Defendant's attorney filed objections to the PIR. (ECF Nos. 907, 914, 915.) Among other things, the Government argued for an offense level of 26, based on its negotiations and discussions with Defendant at the time of the plea and its understanding of the facts underlying Defendant's conduct and criminal history. (ECF No. 907.)

Defendant concurred with many of the Government's objections and also objected to a three-level enhancement for Defendant's leadership role in the racketeering conspiracy because Defendant was in that role for a very short period of time. In addition, Defendant argued that several offenses listed in the criminal history should be scored differently. Some of the offenses, including his conviction for fleeing and eluding and an instance of assault and battery, were relevant conduct for Defendant's federal conviction for racketeering conspiracy and, thus, were not appropriately scored as part of his criminal history.

The probation officer subsequently issued an amended PIR in response to the objections. (Amended Final PIR, ECF No. 940.) The revised PIR gave Defendant an adjusted

offense level of 27 and a criminal history score of VI, resulting in a guideline range of 130 to 162 months in prison. (ECF No. 940.)

Defendant's attorney filed a memorandum in response to the revised PIR, again objecting to the three-level enhancement for Defendant's leadership role in the racketeering conspiracy, and to a one-level enhancement for possession of a firearm. (ECF No. 959.) In addition, Defendant's attorney asked for a downward variance from the guidelines range to take into account the fact that Defendant's criminal history category "represents a criminal history largely dealing with [Defendant's] activities as a HLK," and the fact that Defendant had already been incarcerated for an extended period of time for offenses related to his activities with the HLK. (*Id.*, PageID.8943-8944.)

Judge Bell sentenced Defendant on March 12, 2014. Defendant's attorney raised the same issues at sentencing that he raised in his written submissions. Judge Bell accepted Defendant's argument that the three-point enhancement for a leadership role was not appropriate, and instead gave Defendant a one-point enhancement for that role, but Judge Bell rejected the argument regarding possession of a firearm, resulting in a total offense level of 25 and a criminal history score of VI. (Sentencing Tr. 13, ECF No. 1003.)

As to the request for a downward variance, Defendant's counsel told the Court that almost every criminal offense in Defendant's criminal history involved "relatively minor criminal activity with other Holland Latin King members[,]" and that Defendant was incarcerated for almost eight years for that activity. (*Id.* at 16-17.) Counsel asked for a downward variance to account for "some overlap" between the racketeering conviction and Defendant's criminal history. (*Id.* at 18.) The Government opposed the motion for a downward variance, arguing that the offenses in the criminal history did not, in fact, overlap the HLK conspiracy.

Judge Bell denied the motion for a variance. He acknowledged some "intertwining" between Defendant's prior convictions and his federal racketeering conviction, but nevertheless noted that Defendant's total criminal history points were "well above the threshold" for the highest possible criminal history score, and that Defendant's repeated incarcerations had not deterred him from engaging in further criminal conduct. (*Id.* at 22.)

Using a total offense level of 25 and a criminal history score of VI, Judge Bell determined that Defendant's recommended range of sentence under the Guidelines was 110-137 months. (*Id.* at 13.) Judge Bell sentenced Defendant at the bottom of this range to 110 months in prison, with credit for time served in jail since his arrest. (*Id.* at 23.) This sentence took into account Defendant's "extensive history" of criminal conduct that was troubling to the Court, and provided an "adequate deterrent" to future criminal conduct. (*Id.*)

Defendant appealed his sentence. He again challenged the leadership enhancement and the enhancement for possession of a firearm. He also raised a new claim: he asserted that the calculation of his score under the Guidelines was improper under the Supreme Court's recent ruling in *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015), which held that the residual clause in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), was invalid. Defendant's base offense level was determined, in part, by the fact that he committed his federal offense subsequent to sustaining a conviction for a "crime of violence," as defined in U.S.S.G. § 4B1.2(a), and he argued that his prior conviction would not qualify as a crime of violence if *Johnson* applied to the Sentencing Guidelines.

The Court of Appeals rejected Defendant's objections to the scoring of the enhancements for his leadership role and his possession of a firearm. However, it remanded the

case to the district court to consider the impact of *Johnson* on Defendant's sentence. *United States v. Penaloza*, 648 F. App'x 508, 512-17 (6th Cir. 2016).

On remand, the Government did not respond to Defendant's contention that *Johnson* applied to his case. Consequently, the Court ordered that Defendant be resentenced. (ECF No. 1708.) Applying *Johnson* and taking into account the Court's previous rulings, the probation officer issued a new PIR that gave Defendant a total offense level of 23 and a criminal history score of VI, resulting in a guideline range of 92 to 115 months. (ECF No. 1712.)

In response to the new PIR, Defendant's attorney again asked the Court to grant a downward variance for the reasons previously raised. In other words, counsel asked the Court to take into account the time Defendant spent in custody "for his activities with the Holland Latin Kings (HLK) prior to indictment on this offense." (Sentencing Mem., ECF No. 1716, PageID.22057.) Counsel specifically highlighted the 37 months Defendant spent in custody for "the listed underlying racketeering activity of felon in possession and an assault as described in PIR ¶ 164 and PIR ¶ 167, respectively." (*Id.*)

Judge Bell resentenced Defendant on October 24, 2016. At the resentencing hearing, Defendant's attorney again urged the Court to consider Defendant's prior incarceration for conduct related to the HLK, and to consider Defendant's good conduct in prison since his previous sentence. Judge Bell gave Defendant a sentence of 108 months, but also included in the new judgment a recommendation that "defendant be given special consideration for early furlough if no prison infractions." (Am. J., ECF No. 1718.) Judge Bell explained his sentence as follows:

> So with that sentencing range, with that criminal history level and looking at the seriousness of this offense, this was a question of where we had you charged with conspiring to engage in and there were clearly predicate acts that verified your conspiracy to engage with others, and that I have to take into account and I still do. It still is part of it. I'm going to do this. I'm going to, even though the sentence range comes down to an adjusted offense level of 23 and a criminal history level of

5

VI, the sentence range still is there at 92 to 115 months. I'm not always bound by that, but I think if I'm going to be consistent with myself, particularly on this matter with so many defendants, I've had to be very careful to be consistent with everybody that's present in this matter. And while I didn't decide *Johnson*, I've got to live with it somehow.

And so what I've determined is that I'm going to do this with you. I'm going to leave the supervised release of three years in place when you get out. I'm going to leave the sentence a little bit below where you were. I'm going to leave the sentence at 108 months.

But I'm going to put a recommendation to the Bureau of Prisons, and the Bureau of Prisons will put some of this monkey on your back. I'm going to say to be given special consideration for early furlough from prison if no prison infractions. What that tells the Bureau of Prisons is if you don't hear any trouble from this fellow, you can go ahead and release him and I won't object. That's the best I can do for you in this. . . .

* * *

. . . I don't want to tell you my hands are tied here, but what I have to be cognizant of is that I think I've got about 30 of you and I want to be fair to all of you particularly on this resentencing so I don't go way up on one and way down on the other and everybody gets all upset about it. I've got to keep you all marching in the order you're in, but I'm giving you a little bit of special consideration, and I have a hunch based upon my experience that this note I'm placing into the record as part of your resentencing about special consideration will be understood by them.

In the past, you're probably the -- in nearly almost 30 years here, 29 and a half years here, I think this is probably the fourth or fifth time I've done this, and I've heard back from the prisons saying okay, okay, we understand what you want. Okay? That's all I can do for you. But you've got to hold up your end of it.

(Resentencing Tr. 13-15, ECF No. 1721.)

Defendant did not appeal his new sentence. He now raises the following issues in his motion under § 2255:

I. Mr. Penaloza was Denied the Effective Assistance of Counsel During the Post-ReSentencing/Pre-Appeal Stage of the Criminal Proceeding

II. Mr. Penaloza was Denied the Effective Assistance of Counsel During the Sentencing Hearing and as a Result of Counsel's Failure to Adequately Prepare for Sentencing.

6

(2255 Mot., ECF No. 1802, PageID.22641, 22642.)

The Government argues that the motion should be denied because it is meritless. The Court agrees.

## II. Standards

### A. Merits

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

### B. Hearing

The court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

## III. Analysis

***Ground One:*** **Ineffective Assistance of Counsel After Resentencing**

Defendant contends that he did not file an appeal because his attorney misadvised him regarding the potential drawbacks of doing so. According to an affidavit filed by Defendant,

7

he spoke to his attorney, Peter VanGelderen, after the resentencing hearing and asked about the possibility of filing an appeal because Defendant felt that his sentence was "too long" and it did not "adequately recognize" the time he had served on state charges and his "post-sentence rehabilitation." (Decl. of Def., ECF No. 1810-1, PageID.22764.) VanGelderen allegedly advised him not to appeal, stating, "[Y]ou don't want to stir the pot too much"; an appeal could "change the result 'of something possibly better than expected of this furlough sentence.'" (*Id.*, PageID.22764-22765.) VanGelderen also allegedly told Defendant that "Judge Bell couldn't be clearer or give the sentence he wanted to because of potential disparities with [Defendant's] co-defendants and because 'there is always someone watching.'" (*Id.*, PageID.22765.) VanGelderen allegedly promised to file a motion to clarify the "furlough" provision in Defendant's sentence.

Defendant met with his attorney again about a week later. Defendant asked about the motion for clarification, and VanGelderen allegedly responded that it would be best for Defendant to send a letter Judge Bell. Defendant did so, but did not receive the response that he desired.

After the appeal deadline expired, Defendant apparently learned from prison officials that "they had never heard of an 'early furlough sentence.'" (*Id.*, PageID.22766.) Defendant claims that he wanted to appeal his sentence, but decided not to do so only because he accepted his attorney's advice that he should not disturb the "furlough sentence," and that Judge Bell "was unable to impose a shorter sentence[.]" (*Id.*)

Defendant now claims that his attorney provided ineffective assistance of counsel by recommending that he not appeal. According to Defendant, the furlough provision in the sentence provided no real benefit, so it was a mistake to forgo an appeal for the sake of protecting that provision.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687-92. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* analysis applies where counsel fails to file an appeal. Generally, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim[.]" *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). According to the Supreme Court, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," and has provided ineffective assistance. *Id.* at 477. But absent such an instruction,

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want

9

> to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. "If . . . counsel failed to consult with her client, then the court must address whether the failure to consult, by itself, is indicative of deficient performance." *Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003).

In this case, Defendant does not claim that he expressly instructed his attorney to file an appeal. Nor does he claim that his attorney failed to consult with him. In these circumstances, the language of some cases suggests that this Court must find that his attorney's performance was reasonable. *See United States v. Doyle*, 631 F. 3d 815, 818 (6th Cir. 2011) ("Our application of *Flores–Ortega* is thus clear: because counsel consulted with Doyle about an appeal and Doyle never instructed him to appeal, counsel's performance was not unreasonable."); *Johnson v. United States*, 364 F. App'x 972, 976-77 (6th Cir. 2010) ("Because Grant consulted with [defendant] and [defendant] never gave express instructions to file an appeal, *Flores-Ortega* compels the conclusion that Grant's actions were objectively reasonable."); *Spence v. United States*, 68 F. App'x 669, 671 (6th Cir. 2003) ("Given that [Defendant's] attorney consulted with him regarding the possibility of an appeal, the attorney's performance may be found professionally unreasonable only if the attorney failed to follow an express instruction from [Defendant] to file an appeal").

However, the foregoing cases did not involve precisely the sort of challenge raised here. In effect, Defendant challenges the adequacy of the consultation that he received. Counsel allegedly told Defendant that he could risk losing a benefit that, according to Defendant, was not actually a benefit. Thus, the pertinent issue is whether the advice by Defendant's attorney

constitutes deficient performance and whether, absent such advice, there is a reasonable probability Defendant would have filed a timely appeal. *See Flores-Ortega*, 528 U.S. at 484.

*Flores-Ortega* does not provide much guidance on what an attorney must do to provide proper counsel to a defendant considering an appeal, other than to "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes." That appears to be what happened here. Counsel allegedly told Defendant that a risk of filing an appeal would be to disturb the benefits Plaintiff received, including the unusual furlough provision, and then they agreed not to appeal. Defendant believes that his attorney's advice was incorrect, but the Court is not persuaded that counsel's performance was constitutionally deficient.

As the Supreme Court noted in *Flores-Ortega*, "'[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Id.* at 477 (quoting *Strickland*, 466 U.S. at 689). That deference is particularly appropriate here, where Defendant had already filed an appeal. The issues he could have raised in a second appeal were limited. Generally, "a party is precluded from raising any issues on second appeal which could have been raised on the first one (barring some new development on remand which should be addressed in a subsequent appeal)." *Stamper v. United States*, 258 F. App'x 795, 799 (6th Cir. 2007). Given that Defendant received all the benefit to which he was entitled under the remand, it is questionable whether another appeal would have been warranted. If he thought that his sentence did not adequately take into account his prior incarceration for HLK-related offenses, that is something that he could have raised in his first appeal. It is not likely that he would have been able to raise the issue the second time around.

Furthermore, by appealing, Defendant risked nullifying the benefit of the remand. As Defendant's attorney surely recognized, the state of the law under *Johnson* was unsettled when

the Court resentenced Defendant. The Supreme Court had not yet decided whether the reasoning in *Johnson* applied to the Sentencing Guidelines. Later, the Supreme Court held that it did not apply to the Guidelines. *See Beckles v. United States*, 137 S. Ct. 886, 895 (2016). If *Beckles* had been decided earlier, Defendant would not have been resentenced to 108 months in prison. Moreover, if Defendant had appealed his new sentence and the Supreme Court had issued its decision in *Beckles* before that appeal was decided, it is possible that the reduction he received with his new sentence would have been nullified. Accordingly, Defendant has not shown that his attorney's advice not to appeal was objectively unreasonable.

Defendant faults his counsel for allegedly misleading Defendant into thinking that the furlough provision would provide a benefit. However, it was reasonable for counsel to believe that an express recommendation by a sentencing judge in a written judgment of sentence, one that the judge stated he had given on other occasions, would be considered by prison officials and could provide a benefit.

Furthermore, the Court is not persuaded that there is a reasonable probability that Defendant would have appealed if not for his attorney's advice about the furlough provision. Judging from Defendant's affidavit, Defendant was aware soon after his sentence that there was some uncertainty in how the furlough provision would be applied. Apparently, that is why Defendant's attorney promised to file a motion for clarification. Despite this uncertainty, Defendant opted not to appeal. Defendant's assertion that he did not appeal because he did not want to disturb an uncertain benefit rings hollow.

Defendant also faults counsel for failing to "remedy" Defendant's "issues" with the furlough provision of the sentence by filing a motion for clarification. (§ 2255 Mot., ECF No. 1803, PageID.22658.) It is not clear, however, what "remedy" such a motion offered or what

12

Defendant expected to result from such a motion. Thus, Defendant has not established that failure to file the motion was objectively unreasonable.

Moreover, Defendant has not established prejudice from the failure to file the motion because Defendant learned that his attorney had not filed such a motion when he still had an opportunity to instruct his attorney to file a timely appeal. Thus, the failure to file that motion clearly did not impact Defendant's decision.

In addition, there was nothing unreasonable about Defendant's attorney's advice that Judge Bell could not, or would not, issue a lower sentence to account for Defendant's incarceration for HLK-related offenses. Defendant's attorneys presented this issue to Judge Bell on multiple occasions, yet Judge Bell declined to give Defendant the requested variance. Judge Bell recognized that some of Defendant's prior convictions (and incarceration therefrom) were somewhat "intertwined" with his racketeering conviction, but also noted that Defendant had so many criminal history points that he far exceeded the threshold for the highest criminal history category. In addition, Judge Bell suggested that Defendant's history of repeated crime and incarceration warranted an even stronger sentence. These determinations were well within his discretion as a sentencing judge.

For similar reasons, Defendant has not shown prejudice. It is not clear what benefit Defendant could have obtained by filing an appeal. He offers no nonfrivolous grounds for filing an appeal. *See Flores-Ortega*, 528 U.S. at 486 (noting that prejudice can be satisfied by showing "nonfrivolous grounds for appeal"). Defendant is not *required* to show nonfrivolous grounds for an appeal to demonstrate prejudice, but the lack of such grounds is still relevant for determining whether he would have appealed if given reasonable advice. *See id.*

Also relevant to the prejudice analysis is the fact that Defendant delayed for so long before filing his motion for under § 2255. Defendant contends he learned that prison officials were not aware of a furlough sentence "[a]fter [he] returned to prison[.]" (Decl. of Def., PageID.22765.) However, he apparently waited almost a year before filing his motion under § 2255. This delay suggests that it is unlikely Defendant would have promptly filed or requested an appeal if given different advice. *See Johnson v. United States*, 364 F. App'x 972, 977 (6th Cir. 2010) (denying relief under § 2255 where the defendant "waited almost a full year after sentencing" to file a § 2255 motion); *Cross v. United States*, 73 F. App'x 864, 866 (6th Cir. 2003) (denying relief where defendant "waited nearly eight months after sentencing" before filing a § 2255 motion based on failure to file a notice of appeal).

Thus, for all the foregoing reasons, Ground One is meritless.

*Ground Two:* **Failure to Adequately Prepare for Sentencing**

Defendant also claims that his counsel's assistance was inadequate because he did not "provide legal authority in support of, and properly and fully advocate that [Defendant] should receive a downward departure based on time served on parole violations for conduct considered relevant to the instant offense." (§ 2255 Mot., PageID.22662.) In short, Defendant believes that counsel did not "properly convey that the Court enjoyed discretion to grant [Defendant] a downward departure[.]" (*Id.*, PageID.22663.)

This claim is subject to the performance and prejudice test in *Strickland*. In other words Defendant must show that his attorney's performance was objectively unreasonable. *Strickland*, 466 U.S. at 689-91. In addition, Defendant must show that his attorney's deficient performance prejudiced him. That is, Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is difficult to find any deficiency in counsel's performance because counsel raised the issue of a downward departure on multiple occasions, before and during both sentencing hearings. Counsel was not able to persuade the Court, but that does not mean counsel's performance was professionally unreasonable. *See Lenam v. United States*, 554 F. App'x 413, 415 (6th Cir. 2014) ("[T]he standard is not whether trial counsel for the defense could have done more, but whether he acted reasonably.").

Defendant apparently believes that Judge Bell was unaware that he had discretion to grant the motion for downward departure. However, counsel also pointed out to the Court on several occasions that some of Defendant's co-defendants had received similar consideration for prior sentences that they served for HLK-related activity. (*See* Sentencing Mem., ECF No. 1716, PageID.22057; Resentencing Tr. 5.) And as the Government points out, Judge Bell was the one who sentenced those co-defendants. Thus, there is no question that Judge Bell was already aware that he had the authority to give the same type of credit to Defendant. Making plain to the Court something that was already apparent would not have changed the outcome. Accordingly, Defendant has not shown unreasonable performance or prejudice. Consequently, the claim in Ground Two is meritless.

### IV. Pending Motions

Also before the Court are Defendant's motions to supplement or expand the record. (ECF Nos. 1802, 1804.) The Government has not responded to these motions, which simply ask the Court to consider affidavits signed by Defendant recounting the events underlying his claims. The motions will be granted. As indicated in the previous section, the Court considered Defendant's affidavits when analyzing his claims.

15

**Conclusion**

For the reasons stated, Defendant's motion seeking relief under 28 U.S.C. § 2255 is meritless. Moreover, an evidentiary hearing is not required because the record of the case conclusively shows that Defendant is not entitled to relief. The Court will grant Defendant's motions to supplement the record; however, his motion under § 2255 will be denied.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under *Slack*, to warrant a grant of the certificate, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.

The Court has carefully considered the issues in this matter and finds that reasonable jurists could not find that this Court's denial of Defendant's claims was debatable or wrong. Thus, a certificate of appealability will be denied.

An order will enter consistent with this Opinion.

Dated: February 14, 2019         /s/ Janet T. Neff
                                 Janet T. Neff
                                 United States District Judge