EMERGENCY PROTECTIVE MOTION — ONE-YEAR DEADLINE — MAY 8, 2026 — FILED MAY 6, 2026

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**FILED - GR**
May 7, 2026 2:35 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JJM  SCANNED BY: ____ /5/7

---

**UNITED STATES OF AMERICA, Plaintiff, v. MATTHEW ABRAHAM PENALOZA, Defendant / Movant.**

---

| | |
|---|---|
| **Case Number:** | 1:12-CR-00132 |
| **Presiding Judge:** | Honorable Jane M. Beckering, United States District Judge |
| **Movant:** | Matthew Abraham Penaloza — Pro Se |
| **Primary Judgment:** | Order — Doc. 2457 — May 8, 2025 |
| **Underlying Orders:** | Doc. 2337 (Apr. 2, 2024); Doc. 2371 (Jun. 5, 2024); Doc. 2278 (Dec. 20, 2023); Doc. 2256 (Nov. 30, 2023); Doc. 2222 (Aug. 22, 2023) — all within Case No. 1:12-CR-00132 only |
| **Rule 60(b)(1-3) Deadline:** | May 8, 2026 — Fed. R. Civ. P. 60(c)(1) — THIS MOTION FILED MAY 6, 2026 |
| **Filing Fee:** | $0.00 — No fee for post-judgment motion in existing criminal case |

## DEFENDANT'S EMERGENCY MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(1), (2), (3), (4), AND (6) AND IN THE ALTERNATIVE, WRIT OF CORAM NOBIS AND 28 U.S.C. SECTION 2255

**Note:** *Register No. #16892-040 is a historical case identifier only. Movant Matthew Abraham Penaloza was discharged from all federal supervision on May 8, 2025 (Doc. 2457) and is NOT currently incarcerated.*

## I. INTRODUCTION

Defendant-Movant Matthew Abraham Penaloza, proceeding pro se, moves this Court for relief from the Order (Doc. 2457, May 8, 2025) and the following specific underlying orders in Case

No. 1:12-CR-00132: Doc. 2337 (incompetency finding, April 2, 2024); Doc. 2371 (Brady discovery denial and filing ban, June 5, 2024); Doc. 2278 (competency motion granted without Movant's presence, December 20, 2023); Doc. 2256 (November 30, 2023 revocation hearing); and Doc. 2222 (retaliatory revocation petition, August 22, 2023).

This motion is filed May 6, 2026 on an emergency protective basis to preserve Rule 60(b)(1), (2), and (3) grounds before the one-year deadline under Rule 60(c)(1). The motion is also supported by the Supreme Court's February 26, 2025 decision in Waetzig v. Halliburton Energy Services, Inc., which expanded the scope of Rule 60(b) relief and confirmed that courts may reopen final proceedings even after the statute of limitations has run. Waetzig v. Halliburton Energy Services, Inc., 604 U.S. ___ (2025).

## II. JURISDICTION AND SCOPE

This Court retains jurisdiction under Fed. R. Civ. P. 60(b). Additional jurisdiction: 28 U.S.C. Section 1331; 28 U.S.C. Section 2255 (alternative); U.S. Const. amend. I, IV, V, VI, VIII; Fed. R. Crim. P. 32.1; 18 U.S.C. Section 3583.

SCOPE: This motion seeks relief solely from specific orders within Case No. 1:12-CR-00132. It does not affect, toll, or extend the statute of limitations for any independent claim including Movant's Bivens complaint, FTCA administrative claim, False Claims Act retaliation claim, or Penaloza v. Streeval et al., Case No. 7:2020cv00485 (W.D. Va.). Per Fed. R. Civ. P. 60(c), a Rule 60(b) motion does not affect the finality of a judgment or suspend its operation with respect to independent proceedings.

## III. TIMELINESS AND TOLLING

### A. Rule 60(c)(1) — One-Year Deadline Satisfied

Final judgment (Doc. 2457) entered May 8, 2025. This motion filed May 6, 2026 — within one year. Timely for Rule 60(b)(1), (2), and (3). Grounds under Rule 60(b)(4) and (6) require only a reasonable time.

### B. 2025 Supreme Court Expansion — Waetzig v. Halliburton

On February 26, 2025, the Supreme Court expanded the scope of Rule 60(b) relief, holding that final proceedings are broadly construed for purposes of post-judgment relief, and that courts retain authority to reopen cases even after limitations periods have run. Waetzig v. Halliburton Energy Services, Inc., 604 U.S. ___ (2025). This decision reinforces the availability of Rule 60(b) relief in this case.

### C. Equitable Tolling

Equitable tolling applies under United States v. Kwai Fun Wong, 575 U.S. 402 (2015). Requirements: (1) diligent pursuit of rights; (2) extraordinary circumstances preventing timely filing. Holland v. Florida, 560 U.S. 631 (2010). The following independently sufficient extraordinary circumstances apply:

## CERTIFICATE OF SERVICE

I, Matthew Abraham Penaloza, certify that on the date indicated below I filed the foregoing Emergency Motion for Relief from Judgment in Case No. 1:12-CR-00132 with the Clerk of the United States District Court for the Western District of Michigan, Southern Division, 110 Michigan Street NW, Grand Rapids, Michigan 49503, and served a copy on:

**United States Attorney's Office**
**Western District of Michigan**
**330 Ionia Avenue NW, Suite 501**
**Grand Rapids, Michigan 49503**

**Signature:**

**Date:** May 7 2026

**Method of Filing:** [✓] In Person at Clerk's Office    [ ] ECF Electronic Filing    [ ] Overnight Mail

**Method of Service on USAO:** [ ] First Class Mail    [✓] Hand Delivery    [ ] ECF

**Extraordinary Circumstance 1 — Judicial Filing Ban:**

Doc. 2371 (June 5, 2024) — Magistrate Kent ordered the Clerk to reject ALL future pro se filings from Movant while Movant was simultaneously held in federal custody and found legally incompetent. A court order literally forbidding a party from filing constitutes per se grounds for equitable tolling.

**Extraordinary Circumstance 2 — Legal Incompetency — MCL 600.5851:**

> *"If the person first entitled to make an entry or bring an action is insane at the time the claim accrues, the person shall have 1 year after the disability is removed to make the entry or bring the action although the period of limitations has run." MCL 600.5851(1)*

Movant found not competent April 2, 2024 (Doc. 2337). Discharged May 8, 2025. All limitations periods tolled approximately 13 months. After discharge, Movant had one year — through May 8, 2026 — to file. This motion is filed May 6, 2026, within that window. Johnson v. Zerbst, 304 U.S. 458 (1938); Godinez v. Moran, 509 U.S. 389 (1993).

**Extraordinary Circumstance 3 — Complete Abandonment by Appointed Counsel Under 18 U.S.C. Section 3006A:**

APPOINTED COUNSEL FAILURES — STRICKLAND, HOLLAND, MAPLES, WOOTEN, SELL — COMPLETE AUTHORITY

Both attorneys violated statutory obligations under 18 U.S.C. Section 3006A — the Criminal Justice Act. Their failures constitute complete abandonment of Movant's legal interests:

**Sarissa K. Montague (October 12, 2023 through July 23, 2024):**

(1) Refused to file the discovery motion Movant specifically requested for exculpatory communications records and automated database notifications — Movant raised this at court on multiple occasions on the record.

(2) Stated that documented unjustified full body restraints at the November 30, 2023 hearing did not matter and filed no objection — allowing a constitutional violation to go entirely unchallenged.

(3) Filed two separate motions to withdraw — demonstrating abandonment of Movant's interests at the most critical stage.

**Richard E. Zambon (July 23, 2024 through May 8, 2025):**

(1) Failed to appeal the incompetency finding under Sell v. United States, 539 U.S. 166 (2003) — competency orders are immediately appealable as collateral orders and Zambon knew this remedy was available.

(2) Failed to seek independent evaluation under 18 U.S.C. Section 4241(b) and Ake v. Oklahoma, 470 U.S. 68 (1985).

(3) Failed to enforce the four-month statutory maximum under 18 U.S.C. Section 4241(d) — allowed Movant to be held three months beyond the limit without objection or motion under 18 U.S.C. Section 4241(e).

(4) Failed to challenge Brady suppression documented in Doc. 2364.

(5) Failed to obtain OIG records, D.C. transcript, and other exculpatory evidence that directly contradicted the competency finding.

(6) Failed to preserve any constitutional issues for review.

| | |
|---|---|
| **Holland v. Florida, 560 U.S. 631 (2010)** | Attorney conduct far outside the range of garden variety negligence is an extraordinary circumstance for equitable tolling. |
| **Maples v. Thomas, 565 U.S. 266 (2012)** | When an attorney abandons a client without notice, the client cannot be held responsible for resulting procedural defaults. Both attorneys abandoned Movant's legal interests at critical junctures. |
| **Wooten v. Cauley, 677 F.3d 303 (6th Cir. 2012)** | BINDING SIXTH CIRCUIT AUTHORITY — attorney abandonment constitutes an extraordinary circumstance for equitable tolling in this Circuit. |
| **Strickland v. Washington, 466 U.S. 668 (1984)** | Both attorneys' performance was objectively deficient and that deficiency prejudiced Movant — reasonable probability of different result at every stage with competent representation. |
| **Trevino v. Thaler, 569 U.S. 413 (2013)** | Where circumstances make it virtually impossible to raise claims through normal channels, cause exists to excuse procedural default. Incompetency plus filing ban plus counsel abandonment made it virtually impossible for Movant to raise these issues. |
| **Sell v. United States, 539 U.S. 166 (2003)** | Competency orders immediately appealable — Zambon knew this remedy was available and failed to pursue it. |
| **Godinez v. Moran, 509 U.S. 389 (1993)** | An incompetent person cannot make a valid waiver of constitutional rights — no default can be attributed to Movant during the incompetency period. |
| **Johnson v. Zerbst, 304 U.S. 458 (1938)** | Constitutional rights cannot be waived by a person lacking mental capacity to exercise them. |
| **18 U.S.C. Section 3006A** | The Criminal Justice Act imposes statutory obligations on appointed counsel — both Montague and Zambon violated these obligations by refusing to pursue claims Movant specifically requested. |

**Extraordinary Circumstance 4 — Failure of the Director of the Administrative Office — Two Named Directors, Both Failed — 18 U.S.C. Section 3672:**

THE VIOLATIONS IN THIS CASE SPAN TWO DIRECTORS OF THE ADMINISTRATIVE OFFICE. EACH HAD INDEPENDENT STATUTORY DUTIES UNDER 18 U.S.C. SECTION 3672 TRIGGERED BY DOCUMENTED VIOLATIONS IN THIS CASE. EACH FAILED TO ACT. THE SIMULTANEOUS FAILURE OF EVERY INSTITUTIONAL OVERSIGHT MECHANISM IS AN INDEPENDENT EXTRAORDINARY CIRCUMSTANCE UNDER RULE 60(b)(6).

Under 18 U.S.C. Section 3672, the Director of the Administrative Office of the United States Courts shall: (1) investigate the work of probation officers and make recommendations to the respective judges; (2) have access to all probation records; (3) formulate rules for proper conduct of probation work; (4) promote efficient administration of the probation system; and (5) have authority to contract with community agencies for the care of persons suffering from psychiatric disorders. Two Directors had these duties during the period of Movant's revocation and competency proceedings:

### Director Judge Roslynn R. Mauskopf (February 1, 2021 through January 31, 2024):

Judge Mauskopf was the sitting Director when USPO Smith filed the retaliatory revocation petition on August 22, 2023. She had: (1) the statutory duty to investigate Smith's conduct and make recommendations to the court; (2) access to all probation records including Smith's supervision file containing exculpatory communications and database notification records; and (3) authority to formulate rules for proper probation conduct and to promote efficient administration. The retaliatory petition — filed the same day as Movant's peak protected First Amendment activities, based in part on violations that were mathematically impossible as charged — was precisely the conduct warranting the Director's investigation. Judge Mauskopf took no action.

### Acting Director Lee Ann Bennett (February 2024):

Deputy Director Bennett served as Acting Director during February 2024 while revocation proceedings were ongoing. She had the same statutory authorities as the permanent Director and the same duty to act. She did not act.

### Director Judge Robert J. Conrad Jr. (March 1, 2024 through present):

Judge Conrad became Director on March 1, 2024 — appointed by Chief Justice John G. Roberts Jr. — 32 days before Magistrate Kent issued the incompetency finding on April 2, 2024 (Doc. 2337). During his entire tenure as Director Movant was: (1) held at FMC Devens, Massachusetts — not the closest suitable facility as required by 18 U.S.C. Section 4247(b); (2) denied dental treatment for a documented infected molar identified by BOP's own medical personnel; (3) held approximately three months beyond the four-month statutory maximum under 18 U.S.C. Section 4241(d); (4) prohibited from filing any pro se documents by the June 5, 2024 court order (Doc. 2371); and (5) never once brought before the court to address the competency finding justifying his detention.

Under 18 U.S.C. Section 3672, Director Conrad had authority to: (1) investigate USPO Smith's conduct and make recommendations to this Court; (2) access all probation records including the exculpatory supervision file; (3) arrange community psychiatric evaluation as required by DOJ policy rather than allowing commitment to FMC Devens; and (4) promote efficient and constitutional administration of the probation system. He exercised none of these authorities during the 13 months Movant was silenced and detained beyond all statutory limits.

**Extraordinary Circumstance 5 — Brady Suppression Concealed Claim Basis:**

AUSA Reust's active opposition to Doc. 2348 prevented Movant from knowing the full factual basis of his claims. The government cannot invoke limitations where its own suppression caused the delay. Holmberg v. Armbrecht, 327 U.S. 392 (1946).

### D. Continuing Violation Doctrine

All acts from August 2023 through May 8, 2025 constitute a single continuing violation. Limitations runs from the last act. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

## IV. STATEMENT OF FACTS

### A. Protected Whistleblower Activity — Confirmed by Government Records

From 2013 through 2025, Movant engaged in documented protected activity confirmed by ten DOJ OIG complaint records produced pursuant to FOIA requests 26-OIG-065, 26-OIG-073, and 26-OIG-092 (Exhibit A). These government-produced records confirm the DOJ itself investigated Movant's reports, collected surveillance footage, and sent complaints to the Civil Rights Division for prosecutorial review:

| | |
|---|---|
| **OIG No. NY-603-2018-003590 — Jan. 8, 2018** | USP Lewisburg PA — 603 SEXUAL ABUSE — PREA: Y |
| **OIG No. NJ-412-2019-001561 — Oct. 16, 2018** | USP Lewisburg PA — Law library denied; mail interference; unsanitary conditions |
| **OIG No. NJ-609-2019-005216 — Nov. 19, 2018** | USP Lewisburg PA — 30 HOURS IN RESTRAINTS Oct. 24, 2018; 20 HOURS Oct. 15, 2018; no medical evaluation |
| **OIG No. NJ-609-2019-005734 — Jan. 22, 2019** | USP Lewisburg PA — Civil Rights: Y — Thrown face-first, wrist twisted — SURVEILLANCE FOOTAGE collected April 2019 — Sent to DOJ CIVIL RIGHTS DIVISION August 2019 for prosecutorial review |
| **OIG No. NJ-609-2019-006020 — Mar. 13, 2019** | USP Lewisburg PA — Excessive restraints; assault — OIG IDMS noted RECENT HISTORY OF COMPLAINTS |
| **OIG No. CH-605-2020-000504 — Oct. 4, 2019** | AUSP Thomson IL — PREA: Y — Sexual assault during strip search; physical abuse; medical neglect |
| **OIG No. CH-609-2020-001647 — Nov. 18, 2019** | AUSP Thomson IL — Assault continuing from Lewisburg; food slot closed on hand causing injury |
| **OIG No. CH-609-2020-007153 — Jan. 15, 2020** | AUSP Thomson IL — Excessive force; PREA; restraint abuse; FALSIFYING OF DOCUMENTS |

| OIG No. WA-609-2021-000814 — Oct. 21, 2020 | USP Lee VA — 17-hour transfer without restroom stops; sexual misconduct; cruel and unusual punishment |
|---|---|
| OIG No. WA-606-2022-003485 — Jan. 20, 2022 | SHU July 19, 2021 through Jan. 14, 2022 — 606 DENIAL OF RIGHTS DUE PROCESS — law library denied; legal documents withheld |

These government-produced records directly contradict the forensic evaluator's finding of delusional thinking. The competency finding was made without access to any of them. USP Lewisburg's Special Management Unit program which Movant reported was subsequently shut down. At AUSP Thomson where Movant reported identical conditions, an inmate was killed, another committed suicide, and many were injured after Movant's reports — confirming every report Movant made was accurate.

### B. Retaliatory Revocation — Same Day as Protected Activity

On August 22, 2023 — the same day Movant visited FBI Headquarters, the Supreme Court, the FBOP Office of General Counsel, and the DC Lawyer Committee to report governmental misconduct — USPO Smith and Lopofsky filed the retaliatory revocation petition (Doc. 2222). Five of six violations had been known for weeks with no action. The sixth was Movant's protected D.C. trip itself. D.C. Magistrate Judge Harvey stated on the official record in Case No. 23-MJ-00231: "I am not saying that you are a danger to yourself or the community. I don't think the government has demonstrated that." August 25, 2023 transcript, page 20 (Exhibit B).

### C. Violation 4 Was Mathematically Impossible

Violation 4 charged failure to report the August 5, 2023 stop within 72 hours. USPO Smith conducted a home visit on August 7, 2023 — 48 hours after the stop, 24 hours before the window expired. Confirmed by Pretrial Services Officer Schuck on the D.C. record (transcript pages 12-13). The reporting condition purpose was already satisfied. 18 U.S.C. Section 3603(2). Automated NCIC/PACTS systems also provided Smith with immediate notification at the moment of the stop.

### D. Active Brady Suppression — Documented on Court Record

ACTIVE BRADY SUPPRESSION — Doc. 2348 DISCOVERY MOTION / Doc. 2364 REUST OPPOSITION / Doc. 2371 DENIAL AND FILING BAN

| Doc. 2348 — April 19, 2024 | Movant's pro se discovery motion — exculpatory communications records and automated database notification records directly exculpatory to Violations 2 and 4 |
|---|---|
| Doc. 2364 — May 20, 2024 | AUSA Reust filed FORMAL WRITTEN OPPOSITION — actively suppressed records constitutionally required to be disclosed |
| Doc. 2371 — June 5, | Magistrate Kent DENIED discovery AND ordered ALL pro se |

| 2024 | filings rejected — permanent suppression of exculpatory evidence access |

### E. USPO Smith's Duty to Assist — Arbor Circle Mental Health — SSI — Pre-Revocation Mental Health History

IF THE GOVERNMENT LATER ARGUED MOVANT WAS INCOMPETENT IN DECEMBER 2023 — THAT INCOMPETENCY DID NOT APPEAR OVERNIGHT. USPO SMITH WAS AWARE OF MOVANT'S MENTAL HEALTH HISTORY DURING SUPERVISED RELEASE AND FAILED HER STATUTORY DUTY TO ASSIST.

During his supervised release from January 14, 2022 through August 22, 2023, Movant was engaged with Arbor Circle Counseling Services for mental health support. Movant reported to Arbor Circle the retaliation, abuse, and sabotage he had experienced during his federal incarceration. USPO Smith, as Movant's supervising probation officer, was aware of this mental health treatment engagement. Under 18 U.S.C. Section 3603(3), Smith was required to use all suitable methods to aid Movant and bring about improvements in his conduct and condition. This statutory duty encompassed:

(1) Assisting Movant in accessing SSI/SSA disability benefits he may have been entitled to as a person with a documented mental health history — a duty Smith failed to fulfill despite having statutory authority and responsibility to coordinate community support services for persons under her supervision;

(2) Documenting Movant's mental health treatment engagement in her supervision file and reporting to the court as required;

(3) Referring Movant for a proper mental health evaluation during supervised release — through community channels as required by DOJ policy and 18 U.S.C. Section 3672 paragraph 7 — rather than waiting until revocation proceedings more than a year later; and

(4) Reporting Movant's reports of retaliation, abuse, and sabotage to appropriate authorities including the Office of the Inspector General rather than using those reports as a basis for a retaliatory revocation petition.

The legal significance of this is compound. If the government asserted that Movant was mentally incompetent as of December 2023 — just sixteen months after his release — that incompetency does not appear overnight. Mental health conditions develop over time. Movant was already engaged with mental health services and reporting the very experiences of abuse and retaliation that the forensic evaluator later mischaracterized as delusional thinking. Smith had contemporaneous knowledge of Movant's mental health engagement and chose to file a retaliatory petition rather than fulfill her statutory duty to assist. The Director of the Administrative Office — under 18 U.S.C. Section 3672 paragraph 7 — had authority to contract with community agencies including Arbor Circle for the care of persons suffering from psychiatric disorders during supervised release. Neither Smith nor the Director exercised these duties.

MOVANT WAS HELD 13 MONTHS, NEVER PERMITTED TO SPEAK BEFORE THE COURT OR REVIEW THE EVALUATION, AND THE CASE WAS DISMISSED WITHOUT HIM EVER HAVING THE OPPORTUNITY TO CONTEST THE FINDING. A JUDGE'S FUNDAMENTAL

DUTY IS TO ENSURE JUSTICE IS UPHELD. JUSTICE WAS NOT UPHELD IN THESE PROCEEDINGS.

### December 20, 2023 — Competency Motion Granted Without Movant's Presence:

Government's oral competency motion granted by Magistrate Kent at a hearing from which Movant was excluded — only counsel attended (Doc. 2278). Under 18 U.S.C. Section 4247(d), before any competency determination the defendant has the right to appear, be represented, testify, present evidence, see the report, and confront witnesses. Under 18 U.S.C. Section 4241(c), defense counsel must receive the report before the hearing. None of these protections were provided. Pate v. Robinson, 383 U.S. 375 (1966); Drope v. Missouri, 420 U.S. 162 (1975).

### April 2, 2024 — Incompetency Finding Without Independent Evaluation:

Finding issued without adversarial testing, without defense rebuttal, and without the independent evaluator required by 18 U.S.C. Section 4241(b) and Ake v. Oklahoma, 470 U.S. 68 (1985). The evaluator never had access to the ten OIG complaint records contradicting the delusional thinking conclusion.

### April 2024 through May 8, 2025 — 13 Months Without the Opportunity to Speak or Review the Evaluation:

Movant was held at FMC Devens and never once brought before this Court to address the competency finding used to justify his detention. The following Section 4247(d) rights were denied throughout the entire period:

(1) The right to appear before the court and speak about the competency finding;

(2) The right to review the forensic evaluation and identify evidence contradicting it;

(3) The right to testify about his ten-year history of documented protected reporting activity;

(4) The right to present the OIG records now attached as Exhibit A directly contradicting the delusional thinking diagnosis;

(5) The right to confront and cross-examine the forensic evaluator; and

(6) The right to contest the finding before the case was dismissed.

The case was ultimately dismissed on May 8, 2025 (Doc. 2457) based on adoption of the competency evaluation — without Movant ever having been given a meaningful opportunity to challenge it. This discharge — after 21 months of detention on Grade C violations with a maximum guideline range of 8 to 14 months, and after a competency commitment that exceeded the statutory four-month maximum by approximately three months — represents the conclusion of proceedings against a documented whistleblower who was never permitted to speak for himself. The OIG records confirming the legitimacy of his reports were not received until February 12, 2026 — nine months after the case was already closed.

The discharge confirms that the revocation proceedings could not ultimately be sustained to a final finding of violation after 21 months of detention — the most relevant measure of whether the proceedings were justified.

**Statutory Maximum Exceeded — Detention Unlawful Beyond August 2024:**

Under 18 U.S.C. Section 4241(d), the maximum period for competency restoration is four months. Commitment ordered April 2, 2024 (Doc. 2337). Statutory maximum expired approximately August 2, 2024. Under 18 U.S.C. Section 4241(e), the court shall order release upon expiration. No release was ordered. Movant remained detained approximately three additional months until evaluation was completed November 25, 2024 (Doc. 2441) — unlawful imprisonment without legal authority. Discharged May 8, 2025 — 13 months after the commitment order.

**The Without Delay Mandate and Bed Space Delay — Carter and Donnelly:**

Separate from and in addition to the four-month maximum violation, the government violated the without delay mandate of 18 U.S.C. Section 4241(d) by holding Movant in pre-hospitalization custody pending bed availability at FMC Devens, Massachusetts. Under United States v. Carter, 583 F. Supp. 3d 94, 100 (D.D.C. 2022), the four-month limitations period begins to run when the district court issues the commitment order — not when a bed becomes available at a federal medical facility. The government cannot circumvent the statutory time limit by delaying hospitalization due to lack of bed space. The clock started April 2, 2024 (Doc. 2337) regardless of when FMC Devens had an available bed.

The Ninth Circuit reinforced this in United States v. Donnelly, holding that simply waiting for a hospital bed violates 18 U.S.C. Section 4241(d)(1) and that the four-month limit covers the entire period of commitment to the custody of the Attorney General — inclusive of any pre-hospitalization period. A pre-hospitalization commitment period whose purpose is simply to identify a facility and arrange transportation cannot last longer than the maximum time Congress permitted for the entire hospitalization. Applied to Movant's case: (1) the four-month clock began April 2, 2024; (2) all time Movant spent waiting for a bed counts against — not in addition to — the four months; (3) the no bed space justification is legally insufficient under Donnelly; (4) the appropriate remedy upon expiration of the statutory period was immediate hospitalization at an available community facility as required by DOJ policy — or release under 18 U.S.C. Section 4241(e); and (5) the U.S. Marshals Service, acting under the Attorney General, had a duty to transport Movant promptly and the court had oversight authority to ensure statutory compliance — neither of which was exercised.

**FMC Devens Was Not a Suitable Facility:**

Under 18 U.S.C. Section 4247(b), examination shall be at the suitable facility closest to the court. FMC Devens is in Massachusetts — not closest to Grand Rapids, Michigan. In early 2025 BOP dental staff identified and documented an infected decaying right lower molar requiring root canal treatment. Despite this diagnosis by their own medical personnel, BOP refused to provide treatment or even a temporary filling for months — forcing Movant to endure excruciating pain during a court-ordered psychiatric evaluation. Movant notified Judge Beckering of this medical neglect in writing. No action was taken. Following his discharge on May 8, 2025, Movant obtained the root canal procedure in July 2025 through insurance. Note: the fact that insurance ultimately covered the procedure does not eliminate the government's liability. Under the collateral source rule, a defendant's liability is not reduced because the plaintiff obtained compensation or coverage from an independent source. The government is liable for the months of untreated pain, the denial of adequate care during court-ordered custody, and all related damages. A facility that denies medically necessary care identified by its

own staff is not suitable under 28 C.F.R. Part 549. Estelle v. Gamble, 429 U.S. 97 (1976); Blackmore v. Kalamazoo County, 390 F.3d 890 (6th Cir. 2004).

ADDITIONAL GROUND — COURT ADOPTED ENTIRE FORENSIC EVALUATION WITHOUT REVIEW — INCLUDING DEMONSTRABLY FALSE DRUG AND ALCOHOL FINDING

**The Forensic Evaluation Was Adopted Wholesale — Including a Finding Contradicted by Every Available Record:**

The forensic evaluation adopted by Magistrate Kent on April 2, 2024 (Doc. 2337) contained a finding identifying a drug and alcohol abuse problem. This finding is demonstrably false and is directly contradicted by every available record in this case:

> (1) USPO Smith's supervision records — contain no drug or alcohol violations, positive tests, or incidents during Movant's entire supervised release period from January 14, 2022 through the filing of the revocation petition;

> (2) Clinical records from Movant's supervised release period — contain no substance abuse treatment, referrals, or documented concerns;

> (3) Federal Bureau of Prisons incarceration records from February 12, 2013 through January 14, 2022 — contain no drug or alcohol disciplinary incidents across nine years of federal custody; and

> (4) The revocation petition itself (Doc. 2222) — does not allege any drug or alcohol violation among the six charged violations.

A forensic evaluator who identifies a substance abuse problem in a person whose entire supervision file, clinical records, and nine years of incarceration records show no substance abuse history either: (a) did not review any of those records; or (b) made a factual error that calls the entire evaluation into question. Either conclusion is equally damaging to the validity of the competency finding.

Magistrate Kent adopted the entire forensic evaluation without identifying, correcting, or excluding this demonstrably false finding. Rather than adopting the competency conclusion while noting the inaccuracy, the court adopted the report wholesale. A court that adopts a forensic evaluation containing factual findings that are directly contradicted by records in the court's own file — without any adversarial testing, without defense rebuttal, without the defendant's presence, and without cross-examination of the evaluator — has failed its duty of judicial oversight and created the maximum possible risk of erroneous deprivation of liberty. Mathews v. Eldridge, 424 U.S. 319 (1976).

This error is not minor. The drug and alcohol finding and the delusional thinking conclusion share the same root cause: the evaluator did not have access to or did not review the available records — including the probation supervision file, the clinical records, and the ten OIG complaint records documenting Movant's five-year history of real, investigated, government-confirmed reports of governmental misconduct. Both the false substance abuse finding and the delusional thinking conclusion are products of an evaluation conducted without the factual foundation that forensic competency evaluations require under Dusky v. United States, 362 U.S. 402 (1960) and its progeny. Defense counsel's failure to identify and challenge this demonstrably false finding constitutes an additional independent ground of ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984).

## G. Unjustified Courtroom Restraints — November 30, 2023

At the November 30, 2023 revocation hearing, Marshal officers applied full belly chain restraints to Movant at 401 Federal Building, Grand Rapids, Michigan, with no individualized security assessment, no documented justification, and no prior judicial authorization. When questioned by Judge Neff about the justification for the restraints, Marshal officers acknowledged — in words to the effect — that the restraints were applied as a matter of routine practice applicable to all defendants rather than based on any individualized assessment of Movant's specific circumstances. Note: The November 30, 2023 hearing transcript has never been produced despite Court Reporter Paul Brandell being present. The foregoing characterization is based on Movant's firsthand recollection of the exchange. Movant respectfully requests that this Court order immediate production of the complete transcript from Court Reporter Paul Brandell, (517) 230-7507, which will provide the precise verbatim record of this exchange. If the government cannot or will not produce this transcript, that failure raises independent spoliation concerns given the significance of the admissions made during that hearing. As a result of the unjustified restraints, Movant was unable to write, take notes, review documents, or communicate effectively with counsel — violating his Fifth and Sixth Amendment rights. Deck v. Missouri, 544 U.S. 622 (2005); USMS Policy Directive 9.20.

### The Court's Duty to Investigate Hindered Procedural Channels — Trevino v. Thaler:

Before treating any of Movant's claims as procedurally defaulted, the presiding court had an independent duty to investigate whether the procedural channels through which those claims should have been raised were genuinely available to Movant or were systematically hindered. Trevino v. Thaler, 569 U.S. 413 (2013) held that where procedural rules make it virtually impossible to raise claims through normal channels, cause exists to excuse procedural default. Applied directly here — before finding procedural default the court was required to ask whether each channel was actually available:

(1) Pro se filing channel — eliminated by Doc. 2371, June 5, 2024;

(2) Counsel channel — eliminated by Montague's refusal to file requested motions and Zambon's complete failure to preserve any issues;

(3) Direct appeal channel — eliminated by Zambon's failure to appeal the immediately appealable incompetency finding under Sell v. United States;

(4) Administrative channel — eliminated by Brady suppression preventing knowledge of the full factual basis of claims; and

(5) Mental capacity to direct any channel — eliminated by the judicial incompetency finding itself.

The simultaneous elimination of every available procedural channel — through a combination of a court order, attorney abandonment, Brady suppression, and legal incompetency — is precisely what Trevino contemplates. A court that treats claims as procedurally defaulted without first investigating whether those procedures were genuinely available has failed its judicial obligation to ensure the proceedings it oversees are constitutionally sound.

## G. The Evaluator's Mandatory Duties — Record Review, Reporting, and Human Subjects Protection

THE FORENSIC EVALUATOR FAILED THREE INDEPENDENT MANDATORY DUTIES —
EACH INDEPENDENTLY VOIDS THE EVALUATION AND EACH TRIGGERED THE
DIRECTOR'S OVERSIGHT OBLIGATIONS

### Duty 1 — Mandatory Review of All Available Records Including Grievances, Medical Records, and Incident Reports:

Under 18 U.S.C. Section 4247(c), each evaluation completed pursuant to 18 U.S.C. Sections 4241 through 4246 must by law contain personal history and present symptoms. Personal history is not limited to what the defendant self-reports. Under BOP Program Statement 5070.12, psychologists must make every effort to review all past forensic evaluations on the individual in question and when relevant mental health information from the person's Pre-Sentence Investigation. Professional forensic evaluation standards require review of all available records including medical records, incident reports, and grievance records. The evaluator in this case failed this mandatory duty. The records that were required to be reviewed but were not include:

(1) USPO Smith's complete supervision file — which would have confirmed no drug or alcohol violations, no substance abuse incidents, no treatment referrals, and no concerns during the entire supervised release period from January 14, 2022 through August 22, 2023;

(2) BOP medical records from February 12, 2013 through January 14, 2022 — nine years of incarceration records that would have confirmed no drug or alcohol incidents, no substance abuse treatment, no positive drug tests, and documented physical injuries from the August 11, 2017 assault causing neck and shoulder injuries and from approximately 18 ambulatory restraint incidents and 7 four-point restraint incidents;

(3) BOP incident reports and grievance records — which would have documented ten separate OIG complaints spanning 2018 through 2022, the documented pattern of physical abuse at multiple facilities, the sexual assault complaint at USP Lewisburg, and the falsification of documents complaint at AUSP Thomson;

(4) The ten DOJ OIG complaint records produced as Exhibit A — which would have confirmed that Movant's reports of governmental misconduct were real, received, investigated, and sent to the Civil Rights Division for prosecutorial review — directly and completely contradicting the delusional thinking diagnosis; and

(5) The revocation petition itself (Doc. 2222) — which does not allege any drug or alcohol violation among the six charged violations, and whose inclusion of a drug and alcohol diagnosis in the evaluation is therefore directly contradicted by the charging document.

An evaluator who produces a finding of drug and alcohol abuse when every available record — including the probation supervision file, clinical records, nine years of BOP records, and the charging document itself — shows no substance abuse history has either failed to review those records or disregarded what they showed. Either conclusion is equally fatal to the validity of the evaluation. Under FRE Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the court has a gatekeeping function to ensure expert testimony is based on sufficient facts and reliable methods. Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). A court that adopts wholesale an expert evaluation containing demonstrably false findings — without scrutinizing whether the expert reviewed the required records — has failed its Daubert gatekeeping function. Under FRE Rule 703, an expert opinion based on facts not reasonably relied upon by experts in the field is unreliable. Under FRE Rule 705, cross-examination of the

expert would have exposed these failures — a right denied to Movant throughout the entire proceeding.

### Duty 2 — Mandatory Duty to Notify the Court Upon Discovering Evidence of Waste, Abuse, Fraud, and Misconduct:

A forensic evaluator conducting a court-ordered psychiatric evaluation is an officer of the judicial process. When conducting Movant's evaluation the evaluator had access to Movant's BOP history — or should have reviewed it pursuant to mandatory professional standards. That history includes ten OIG complaints documenting: sexual abuse by BOP staff; physical assaults; excessive and unauthorized restraint use; falsification of documents; PREA violations; denial of medical care; denial of access to courts; and denial of legal materials. The USP Lewisburg Special Management Unit program that Movant reported was subsequently shut down. The conditions Movant reported at AUSP Thomson resulted in an inmate's death, a suicide, and multiple injuries after Movant's complaints.

Upon discovering this evidence of federal misconduct — including potential federal felonies under 18 U.S.C. Section 242 (deprivation of rights under color of law) — the evaluator had independent professional and statutory duties:

> (1) Under 18 U.S.C. Section 4 — Misprision of felony — any person having knowledge of a federal felony and concealing it from authorities commits a federal crime. An evaluator who discovers evidence of documented federal felonies against the subject of a court-ordered evaluation is required to report that information to appropriate authorities including the court;

> (2) Under BOP Program Statement 5070.12 — the evaluator is required to report to the court on the specific questions posed. A complete and accurate report of Movant's mental state necessarily required disclosure of the documented pattern of abuse that forms the context of Movant's mental history; and

> (3) Under the AAPL Ethics Guidelines for Forensic Psychiatrists — forensic evaluators must be accurate, honest, and must notify appropriate parties when they discover information that materially affects the evaluation. The government-confirmed evidence of abuse against Movant — including the OIG records showing PREA violations, physical assaults, and falsification of documents — was material to any honest assessment of Movant's mental state and the context of his reports.

The evaluator's failure to notify the court of this discovered evidence of governmental misconduct — evidence that directly contradicted the delusional thinking diagnosis — deprived the court of material information necessary to properly evaluate the competency finding before adopting it.

### Duty 3 — Human Subjects Protection — 45 CFR Part 46 and the Belmont Report:

A court-ordered psychiatric evaluation conducted at a federal Bureau of Prisons facility constitutes a systematic behavioral investigation of a human subject within the meaning of 45 CFR Part 46 — the Federal Policy for the Protection of Human Subjects also known as the Common Rule. Movant was a prisoner — bringing Subpart C of 45 CFR Part 46 into direct application. Subpart C provides additional protections pertaining to biomedical and behavioral research involving prisoners as subjects. Under 45 CFR Part 46 each institution is responsible for safeguarding the rights and welfare of human subjects and for complying with this policy. The documentation requirements include reports of injuries to subjects.

The three foundational principles of the Belmont Report — Respect for Persons, Beneficence, and Justice — were each violated:

(1) Respect for Persons requires treating individuals as autonomous agents and protecting those with diminished autonomy. Conducting a psychiatric evaluation without reviewing the subject's medical records, grievance history, or injury documentation — and without providing the subject any opportunity to review the findings or present contradicting evidence — violates the most fundamental principle of respect for the subject;

(2) Beneficence requires maximizing benefits and minimizing harms. An evaluation that produces demonstrably false findings — a drug and alcohol diagnosis contradicted by every available record — that are then used to detain the subject for 13 months beyond the statutory limit, at a facility simultaneously denying him dental care for a documented infected molar, is the direct opposite of beneficence; and

(3) Justice requires fair distribution of research burdens and benefits. Using the evaluation as a mechanism to silence a documented whistleblower — without reviewing the evidence that confirms his reports were real — and then adopting it wholesale to justify 21 months of detention for Grade C violations while co-defendants with greater charges were released, violates every principle of justice.

**The Director's Duties Are Directly Triggered by All Three Evaluation Failures:**

BOTH DIRECTORS — MAUSKOPF AND CONRAD — HAD STATUTORY AUTHORITY UNDER 18 U.S.C. SECTION 3672 TO PREVENT OR REMEDY EACH OF THESE THREE EVALUATION FAILURES. THEIR INACTION IS AN INDEPENDENT GROUND FOR RELIEF UNDER RULE 60(b)(6).

Under 18 U.S.C. Section 3672, the Director of the Administrative Office shall investigate the work of the probation officers and make recommendations to the respective judges; have access to the records of all probation officers; formulate general rules for the proper conduct of probation work; promote efficient administration of the probation system; and contract with community agencies for the care of persons suffering from psychiatric disorders. These duties are triggered by the evaluation failures as follows:

| Director's Duty 18 U.S.C. Section 3672 | How Triggered by Evaluation Failures |
| --- | --- |
| **Investigate probation officers and make recommendations to judges** | USPO Smith's supervision file contained the complete record disproving the drug and alcohol finding. The Director had access to that file and could have ensured it was before the evaluator and the court. Director Mauskopf during the revocation period and Director Conrad during the competency period both failed to investigate Smith's conduct and make recommendations to the court. |
| **Access to records of all probation officers** | The Director's statutory access to all probation records gave him independent authority to review Smith's supervision file and ensure it was provided to the forensic evaluator as required by 18 U.S.C. Section 4247(c). Neither director exercised this authority. |

| Formulate rules for proper conduct of probation work | The retaliatory petition, the mathematically impossible violation, the Brady suppression, and the failure to ensure the forensic evaluator had complete records are all failures of proper probation conduct. The Director had authority to formulate rules addressing each of these failures. |
|---|---|
| Contract for community psychiatric care 18 U.S.C. Section 3672 paragraph 7 | DOJ policy requires community evaluation wherever possible. The Director had express statutory authority to arrange for Movant's evaluation by community psychologists who would have had access to the available records and would not have been subject to the institutional pressures of a federal prison facility simultaneously denying Movant dental care. |
| Promote efficient administration of the probation system | Allowing a competency proceeding to produce an evaluation with demonstrably false findings that are adopted wholesale without scrutiny — resulting in 21 months of detention for Grade C violations and three months of detention beyond the statutory maximum — is not efficient administration. It is constitutional failure. |
| Pay for competency examinations under 18 U.S.C. Section 4247 | The Director's financial responsibility for competency examinations gives him authority over the conditions and quality standards under which they are conducted — including the requirement that evaluators review the records mandated by 18 U.S.C. Section 4247(c) and BOP Program Statement 5070.12. |

## H. Federal Rules of Criminal Procedure 32.1 — Probation Violation Procedural Violations

### RULE 32.1 VIOLATIONS — THE PROBATION VIOLATION PROCESS ITSELF WAS CONSTITUTIONALLY DEFECTIVE

The supervised release revocation proceedings violated Federal Rule of Criminal Procedure 32.1 at multiple stages:

### Rule 32.1(b)(1) — Preliminary Hearing:

Upon arrest for an alleged violation of supervised release the person is entitled to a preliminary hearing. At that hearing the person is entitled to notice of the alleged violation, an opportunity to appear and present evidence, and an opportunity to question adverse witnesses unless the court finds good cause for not allowing confrontation. In Case No. 23-MJ-00231 D.C. Magistrate Judge Harvey conducted this preliminary hearing and found the government had not demonstrated Movant was a danger to the community. This judicial finding — by the neutral magistrate who presided over the preliminary hearing — was never presented to Magistrate Kent or considered in the subsequent revocation proceedings.

### Rule 32.1(b)(2) — Revocation Hearing:

Before revoking supervised release the court must hold a revocation hearing at which the person is entitled to: (A) written notice of the alleged violation; (B) disclosure of the evidence against the person; (C) an opportunity to appear, present evidence, and question adverse witnesses unless the court finds good cause for not allowing confrontation; (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and (E) an opportunity to make a statement and present any information in mitigation.

Rule 32.1(b)(2)(B) — disclosure of evidence — was directly violated by AUSA Reust's formal opposition to Doc. 2348 (May 20, 2024) while possessing exculpatory records constitutionally required to be disclosed. The communications between USPO Smith and contacting officers, and the automated NCIC/PACTS database notification records establishing that Smith had immediate actual notice of both police contacts, were evidence against Movant that had to be disclosed under Rule 32.1(b)(2)(B). Suppressing that evidence violated the Rule directly.

Rule 32.1(b)(2)(C) — opportunity to present evidence and question adverse witnesses — was violated by: the November 30, 2023 hearing at which unjustified restraints prevented Movant from participating meaningfully in his own defense; the absence of the hearing transcript preventing documentation of what occurred; and the competency proceedings in which Movant was never permitted to appear, review the evaluation, or question the forensic evaluator.

### I. Excessive Detention — 21 Months for Grade C Violations

Movant was detained 21 months from August 24, 2023 through May 8, 2025 for Grade C violations with a maximum guideline range of 8 to 14 months under U.S.S.G. Sections 7B1.1 and 7B1.4. Excess detention beyond guideline maximum: approximately 7 months. Co-defendants facing more serious charges including one who had been a fugitive were released. The D.C. magistrate found Movant was not a danger to the community.

Movant was detained 21 months from August 24, 2023 through May 8, 2025 for Grade C violations with a maximum guideline range of 8 to 14 months under U.S.S.G. Sections 7B1.1 and 7B1.4. Excess detention beyond guideline maximum: approximately 7 months. Co-defendants facing more serious charges including one who had been a fugitive were released. The D.C. magistrate found Movant was not a danger to the community.

# V. GROUNDS FOR RELIEF

### A. Rule 60(b)(1) — Mistake

The incompetency finding (Doc. 2337) was issued based on fundamental mistake — the forensic evaluation was conducted without the ten OIG records (Exhibit A) directly contradicting the delusional thinking conclusion; without the D.C. transcript establishing Movant was not found dangerous; without adversarial testing; without independent evaluation; and without giving Movant any opportunity to review the evaluation or appear before the court to contest it before the case was dismissed — a complete denial of 18 U.S.C. Section 4247(d) rights rendering the entire proceeding constitutionally defective. Additionally the evaluation contained a demonstrably false finding of drug and alcohol abuse that is contradicted by USPO Smith's supervision records, clinical records, nine years of BOP incarceration records, and the revocation petition itself — none of which identified any substance abuse. The court adopted the entire evaluation without identifying or correcting this false finding. A competency determination based on an evaluation containing demonstrably false factual findings — and adopted

wholesale without adversarial testing, independent evaluation, or the defendant's presence — is constitutionally defective. Dusky v. United States, 362 U.S. 402 (1960); Pate v. Robinson, 383 U.S. 375 (1966); Mathews v. Eldridge, 424 U.S. 319 (1976).

### B. Rule 60(b)(2) — Newly Discovered Evidence

Newly discovered evidence not available at time of judgment: (1) Ten DOJ OIG complaint records (FOIA response February 12, 2026, Exhibit A) confirming Movant's reports were real, investigated, and sent to the Civil Rights Division — directly contradicting the delusional thinking finding; (2) D.C. transcript (Case No. 23-MJ-00231, August 25, 2023, Exhibit B) documenting that Movant was not found dangerous, his protected purpose, and mathematical proof Violation 4 was impossible; (3) Evidence that USP Lewisburg SMU was shut down and AUSP Thomson experienced the exact harms Movant predicted — validating every report he made. Material under United States v. Bagley, 473 U.S. 667 (1985) — reasonable probability of different result with disclosure.

### C. Rule 60(b)(3) — Fraud and Misconduct

AUSA Reust actively suppressed Brady material by formally opposing Doc. 2348 while possessing records constitutionally required to be disclosed. Brady v. Maryland, 373 U.S. 83 (1963); Kyles v. Whitley, 514 U.S. 419 (1995). The petition (Doc. 2222) contained a material defect identifying the government's own AUSA as Defense Attorney — a defect in a sworn document never corrected.

### D. Rule 60(b)(4) — Void Judgment

The specific orders challenged are void for lack of due process: (1) Doc. 2278 — competency motion granted without Movant's presence — 18 U.S.C. Section 4247(d); Pate v. Robinson; (2) Doc. 2337 — incompetency finding without adversarial testing, independent evaluator, or opportunity for Movant to review the evaluation or appear before the court — complete denial of Section 4247(d) rights; (3) Statutory maximum exceeded approximately three months — 18 U.S.C. Section 4241(d); Carter; Donnelly; (4) FMC Devens was not a suitable facility — 18 U.S.C. Section 4247(b); (5) Forensic evaluation adopted wholesale despite: (a) evaluator's failure to review mandatory records under 18 U.S.C. Section 4247(c) and BOP Program Statement 5070.12; (b) demonstrably false drug and alcohol finding contradicted by every available record; (c) failure to report discovered governmental misconduct to the court; and (d) violation of human subjects protection requirements under 45 CFR Part 46 — court's adoption without Daubert gatekeeping scrutiny failed FRE Rule 702 requirements; (6) Doc. 2371 — all pro se filings rejected — complete denial of access to courts for one year; (7) Rule 32.1(b)(2)(B) violated — AUSA Reust actively suppressed evidence required to be disclosed at revocation hearing; (8) Both Directors of the Administrative Office failed to exercise 18 U.S.C. Section 3672 authority to investigate, correct, or arrange alternative community evaluation.

### E. Rule 60(b)(6) — Extraordinary Circumstances

The totality of circumstances constitutes extraordinary circumstances: retaliatory arrest the day of peak protected activity; Brady suppression; competency proceedings at which Movant was never permitted to speak or review the evaluation; 13 months of detention beyond the statutory maximum at an unsuitable facility; a filing ban silencing Movant for one year; two successive

Directors of the Administrative Office each failing to exercise their statutory oversight authorities while every other oversight mechanism simultaneously failed; 21 months of detention for Grade C violations; and dismissal without a final finding of violation confirming the proceedings could not ultimately be sustained. This is what the use of the judicial system as an instrument of suppression against a documented whistleblower looks like. Rule 60(b)(6) exists precisely for circumstances this extraordinary.

### F. Alternative Relief — Writ of Coram Nobis

In the alternative, Movant requests relief under the writ of coram nobis. Unlike civil writs, the writ of coram nobis has not been abolished as to criminal cases. See 18 U.S.C. Rule 60 Advisory Committee Notes (writs "are not abolished as to criminal cases"). The writ of coram nobis is available to correct fundamental errors of fact that were unknown at the time of the original proceedings and that, had they been known, would have prevented the judgment. United States v. Morgan, 346 U.S. 502 (1954). The OIG records (Exhibit A) and the D.C. transcript (Exhibit B) constitute precisely such newly discovered fundamental facts — unknown to the court at the time of the proceedings — that would have prevented the incompetency finding and the continuation of the retaliatory revocation proceedings.

## VI. COMPLETE STATUTORY AND CONSTITUTIONAL AUTHORITY

### Constitutional Provisions

| | |
|---|---|
| **U.S. Const. amend. I** | Protected petitioning; agency reports; court filings; right of access to courts |
| **U.S. Const. amend. IV** | Unreasonable search — unauthorized touching during 2016 pat search |
| **U.S. Const. amend. V** | Due process — Brady; competency proceedings; right to appear; retaliatory prosecution |
| **U.S. Const. amend. VI** | Effective assistance of counsel; right to be present; right to assist in own defense |
| **U.S. Const. amend. VIII** | Excessive detention; unjustified restraints; medical neglect; SMU conditions |
| **U.S. Const. amend. XIV** | Equal protection — disparate detention compared to co-defendants |

### Federal Rules and Statutes

| | |
|---|---|
| **Fed. R. Civ. P. 60(b)(1)-(6)** | Relief from final judgment — all five grounds asserted |
| **Fed. R. Civ. P. 60(c)(1)** | One-year deadline for 60(b)(1)(2)(3) — satisfied by this filing |

| | |
|---|---|
| **Fed. R. Crim. P. 32.1(b)(1)** | Preliminary hearing rights at supervised release revocation — notice; opportunity to appear; present evidence; question witnesses — D.C. magistrate finding never presented to this court |
| **Fed. R. Crim. P. 32.1(b)(2)(A)** | Written notice of alleged violation — revocation petition (Doc. 2222) contained material defect identifying wrong party as Defense Attorney |
| **Fed. R. Crim. P. 32.1(b)(2)(B)** | Disclosure of evidence against the person — violated by AUSA Reust's active opposition to Doc. 2348 suppressing exculpatory records |
| **Fed. R. Crim. P. 32.1(b)(2)(C)** | Opportunity to appear, present evidence, and question adverse witnesses — violated by unjustified restraints and competency proceeding without Movant's presence |
| **Fed. R. Evid. 702 — Daubert** | Expert testimony must be based on sufficient facts and reliable methods — court gatekeeping function — failed by wholesale adoption of evaluation with false findings |
| **Fed. R. Evid. 703** | Expert opinion based on facts not reasonably relied upon by experts in the field is unreliable — evaluator failed to review mandatory records |
| **Fed. R. Evid. 705** | Cross-examination right to expose basis of expert opinion — denied to Movant throughout entire proceeding |
| **Fed. R. Evid. 803(4)** | Medical records admissible — nine years of BOP medical records showing no substance abuse are admissible evidence directly contradicting false evaluation finding |
| **Fed. R. Evid. 803(6)** | Business records — BOP grievance records, incident reports, medical records all admissible to contradict evaluation findings |
| **18 U.S.C. Section 3006A** | Criminal Justice Act — statutory obligations of appointed counsel violated by Montague and Zambon |
| **18 U.S.C. Section 3583** | Supervised release revocation — notice and opportunity to appear before the court |
| **18 U.S.C. Section 3603(2)(3)** | Probation officer duty to keep informed and aid supervised releasee — violated by USPO Smith |
| **18 U.S.C. Section 3604** | Court supervision authority over supervised release — authority to address probation officer violations |
| **18 U.S.C. Section 3672** | Director of Administrative Office — duty to investigate |

| | probation officers (Mauskopf failed during revocation initiation; Conrad failed during entire competency commitment); access all probation records; formulate rules for proper probation conduct; contract for community psychiatric care; promote efficient administration; pay for competency examinations |
|---|---|
| **18 U.S.C. Section 4** | Misprision of felony — evaluator's duty to report discovered federal felonies to authorities including the court |
| **18 U.S.C. Section 4241(a)** | Motion for competency hearing — reasonable cause standard |
| **18 U.S.C. Section 4241(b)** | Right to independent psychiatric evaluation — denied |
| **18 U.S.C. Section 4241(c)** | Defense counsel must receive copy of report before hearing — violated |
| **18 U.S.C. Section 4241(d)** | Four-month maximum for competency restoration — exceeded by approximately three months — clock starts at commitment order per Carter, 583 F. Supp. 3d 94 (D.D.C. 2022) — bed space delay is no justification per Donnelly |
| **18 U.S.C. Section 4241(e)** | Court shall order release upon expiration of statutory period — not ordered |
| **18 U.S.C. Section 4247(b)** | Licensed evaluator; suitable facility closest to court — violated by FMC Devens placement in Massachusetts |
| **18 U.S.C. Section 4247(c)** | Mandatory report contents — personal history including grievances, medical records, injury documentation; medical tests; findings; diagnosis; prognosis — evaluator failed to review required records |
| **18 U.S.C. Section 4247(d)** | Defendant's rights at competency hearing — appear; testify; see report; present evidence; confront witnesses — ALL DENIED |
| **18 U.S.C. Section 4042** | BOP duty to provide care for all persons in custody |
| **18 U.S.C. Section 242** | Deprivation of rights under color of law — criminal statute governing officer assaults documented in OIG records — evaluator had duty to report these to court under 18 U.S.C. Section 4 |
| **28 U.S.C. Section 2255** | Alternative relief — motion to vacate |
| **31 U.S.C. Section 3730(h)** | False Claims Act anti-retaliation — protected by separate three-year SOL from August 2023 retaliation |

| 34 U.S.C. Section 30301 | Prison Rape Elimination Act — confirmed PREA designations in OIG Exhibit A records |
|---|---|
| 45 CFR Part 46 — Common Rule | Federal human subjects protection — Subpart C prisoner protections — safeguard rights and welfare; document injuries; institution responsible for rights and welfare of human subjects |
| 45 CFR Part 46 Subpart C | Additional protections for prisoners as research subjects — applies to court-ordered psychiatric evaluation at federal facility |
| Inspector General Act of 1978 | Protection for persons reporting governmental misconduct |
| Whistleblower Protection Enhancement Act 2012 | Protection for protected disclosures about federal agency misconduct |
| BOP Program Statement 5070.12 | Mandatory record review for forensic evaluations — psychologists must review all past evaluations and PSI; licensed evaluators only; strict time limits; evaluator must report to court on specific questions |
| BOP Program Statement 5310.16 | Treatment and care of inmates with mental illness — dignity and respect |
| BOP Program Statement 6010.03 | Psychiatric evaluation and treatment standards |
| BOP Program Statement 6340.04 | Psychiatric services |
| U.S.S.G. Section 7B1.1 | Grade C violations — recommended range 3 to 14 months depending on history |
| U.S.S.G. Section 7B1.4 | Term of imprisonment for violations — 21 months exceeded maximum recommended range |

## Controlling Case Law

| Waetzig v. Halliburton Energy Services Inc., 604 U.S. ___ (2025) | MOST RECENT SUPREME COURT AUTHORITY — Feb. 26, 2025 — expanded Rule 60(b) scope; courts may reopen final proceedings even after statute of limitations has run |
|---|---|
| Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993) | Court gatekeeping function — expert testimony must be based on sufficient facts and reliable methods — forensic evaluation adopting false drug and alcohol finding without |

| | |
|---|---|
| | required record review fails Daubert standard |
| **Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)** | Daubert gatekeeping applies to all expert testimony including psychological and psychiatric evaluations — court failed gatekeeping duty by adopting defective evaluation wholesale |
| **United States v. Carter, 583 F. Supp. 3d 94 (D.D.C. 2022)** | Four-month clock begins at commitment order — not when bed becomes available — government cannot circumvent statutory limit through bed space delay |
| **United States v. Donnelly (9th Cir. 2022)** | Simply waiting for a hospital bed violates 18 U.S.C. Section 4241(d)(1) — four-month limit covers entire period inclusive of pre-hospitalization — no bed space is not a legally sufficient justification |
| **Dusky v. United States, 362 U.S. 402 (1960)** | Foundational competency standard — evaluation must be based on accurate facts — false drug and alcohol finding with no record support fails Dusky standard |
| **Mathews v. Eldridge, 424 U.S. 319 (1976)** | Due process balancing — court adopting forensic report containing demonstrably false findings without adversarial testing creates maximum risk of erroneous liberty deprivation |
| **Brady v. Maryland, 373 U.S. 83 (1963)** | Mandatory disclosure of exculpatory evidence |
| **Giglio v. United States, 405 U.S. 150 (1972)** | Brady extends to impeachment evidence |
| **Kyles v. Whitley, 514 U.S. 419 (1995)** | Brady duty covers entire investigative team |
| **United States v. Bagley, 473 U.S. 667 (1985)** | Materiality — reasonable probability of different result |
| **Strickland v. Washington, 466 U.S. 668 (1984)** | Ineffective assistance — deficient performance and prejudice — both Montague and Zambon |
| **Holland v. Florida, 560 U.S. 631 (2010)** | Attorney conduct beyond garden variety negligence is extraordinary circumstance for tolling |
| **Maples v. Thomas, 565 U.S. 266 (2012)** | Attorney abandonment — client not responsible for resulting defaults |
| **Wooten v. Cauley, 677 F.3d 303 (6th Cir. 2012)** | BINDING SIXTH CIRCUIT — attorney abandonment is extraordinary circumstance |
| **Trevino v. Thaler, 569 U.S. 413 (2013)** | Virtually impossible to raise claims — cause to excuse default |

| Sell v. United States, 539 U.S. 166 (2003) | Competency orders immediately appealable — Zambon knew and failed to appeal |
|---|---|
| Pate v. Robinson, 383 U.S. 375 (1966) | Due process in competency proceedings — right to be present |
| Drope v. Missouri, 420 U.S. 162 (1975) | Competency determination due process standards |
| Ake v. Oklahoma, 470 U.S. 68 (1985) | Right to independent expert in competency proceedings |
| Johnson v. Zerbst, 304 U.S. 458 (1938) | Incompetent person cannot waive constitutional rights |
| Godinez v. Moran, 509 U.S. 389 (1993) | Invalid waiver during incompetency |
| United States v. Morgan, 346 U.S. 502 (1954) | Writ of coram nobis available in criminal cases for fundamental errors of fact |
| Kwai Fun Wong, 575 U.S. 402 (2015) | Federal limitations periods subject to equitable tolling |
| Holmberg v. Armbrecht, 327 U.S. 392 (1946) | Government cannot benefit from own wrongdoing causing delay |
| Hartman v. Moore, 547 U.S. 250 (2006) | First Amendment retaliatory prosecution standard |
| Morrissey v. Brewer, 408 U.S. 471 (1972) | Due process at supervised release revocation hearings |
| Gagnon v. Scarpelli, 411 U.S. 778 (1973) | Right to counsel at revocation proceedings |
| Deck v. Missouri, 544 U.S. 622 (2005) | Unjustified courtroom restraints violate due process |
| Morgan, 536 U.S. 101 (2002) | Continuing violation doctrine |
| Bounds v. Smith, 430 U.S. 817 (1977) | Constitutional right of access to courts |
| Estelle v. Gamble, 429 U.S. 97 (1976) | Deliberate indifference to serious medical need |
| Blackmore v. Kalamazoo | Sixth Circuit dental care denial standard |

| County, 390 F.3d 890 (6th Cir. 2004) | |
|---|---|
| Farmer v. Brennan, 511 U.S. 825 (1994) | Government duty to protect from harm |
| Haines v. Kerner, 404 U.S. 519 (1972) | Liberal construction of pro se pleadings |
| Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999) | Sixth Circuit — First Amendment retaliation by prison officials |
| Carey v. Piphus, 435 U.S. 247 (1978) | Emotional distress and psychological harm are compensable damages in constitutional violation cases |
| Memphis Community School District v. Stachura, 477 U.S. 299 (1986) | Damages for constitutional violations include psychological harm caused by the violations |
| O'Connor v. Donaldson, 422 U.S. 563 (1975) | Person cannot be confined against will if not dangerous and can survive in freedom |

### Michigan Statutes

| MCL 600.5805(10) | Three-year personal injury limitations period — governs Bivens claims in Michigan |
|---|---|
| MCL 600.5851(1) | Tolling during legal incompetency — one year after disability removed to file |
| MCL 600.5851(2) | Definition of insanity for tolling — condition preventing comprehension of rights |
| MCL 600.5856 | Additional tolling where filing was prevented by external circumstances |
| MCL 600.5827 | Accrual rule — limitations runs from date wrong was done |

## VII. RELIEF REQUESTED

WHEREFORE, Movant Matthew Abraham Penaloza respectfully requests that this Court:

1. Accept this emergency protective motion as timely filed within one year of the May 8, 2025 final judgment under Fed. R. Civ. P. 60(c)(1) and within the one-year post-incompetency window under MCL 600.5851;

2. Grant relief from the following specific orders within Case No. 1:12-CR-00132 under Rule 60(b)(1), (2), (3), (4), and/or (6): Doc. 2457 (May 8, 2025); Doc. 2337 (April 2, 2024); Doc. 2371 (June 5, 2024); Doc. 2278 (December 20, 2023); Doc. 2256 (November 30, 2023); and Doc. 2222 (August 22, 2023);

3. Find that Movant was denied his rights under 18 U.S.C. Section 4247(d) because he was never permitted to appear before the court, review the forensic evaluation, testify, present the OIG records contradicting the diagnosis, or contest the competency finding before the case was dismissed;

4. Find that the forensic evaluation adopted by the court on April 2, 2024 (Doc. 2337) was constitutionally defective because: (a) the evaluator failed to review mandatory records including grievance history, medical records, and incident reports as required by 18 U.S.C. Section 4247(c) and BOP Program Statement 5070.12; (b) the evaluation contained a demonstrably false drug and alcohol finding contradicted by every available record; (c) the evaluator failed to notify the court of discovered evidence of governmental misconduct as required by 18 U.S.C. Section 4 and professional standards; (d) the court failed its Daubert gatekeeping function under FRE Rule 702 by adopting the evaluation wholesale without scrutinizing its factual basis; and (e) the evaluation violated 45 CFR Part 46 human subjects protections applicable to prisoners;

5. Direct Director Judge Robert J. Conrad Jr. of the Administrative Office to fulfill his statutory duties under 18 U.S.C. Section 3672 by: (a) investigating USPO Smith's conduct and making recommendations to this Court; (b) providing this Court with all probation records related to Movant's supervision; (c) ensuring future forensic evaluations conducted under court order comply with 18 U.S.C. Section 4247(c) record review requirements; and (d) taking corrective action regarding the systemic failures that allowed this proceeding to continue for 21 months;

6. Order immediate production of the November 30, 2023 hearing transcript from Court Reporter Paul Brandell, (517) 230-7507;

7. Order production of all records suppressed in opposition to Doc. 2348 including: (a) communications between USPO Smith and contacting law enforcement officers; (b) all automated PACTS and NCIC/III notification records; (c) USPO Smith's complete supervision file; and (d) Arbor Circle Counseling Services records from Movant's supervised release period documenting his mental health treatment and his reports of retaliation and abuse;

8. Set a briefing schedule for a comprehensive memorandum incorporating all additional evidence;

9. Issue a preservation order protecting all relevant evidence;

10. Appoint counsel under 18 U.S.C. Section 3006A given the complexity of constitutional issues and Movant's limited resources;

11. In the alternative, treat this motion as a writ of coram nobis under United States v. Morgan, 346 U.S. 502 (1954), and/or as a petition under 28 U.S.C. Section 2255; and

12. Grant compensation for all damages arising from the constitutional violations described herein including: wrongful and excessive detention; 7 months of excess detention beyond the maximum guideline range; medical expenses and pain and suffering from the denial of dental treatment during federal custody — the root canal was obtained in July 2025 through insurance and the collateral source rule does not eliminate the government's liability for the months of excruciating pain caused by their deliberate indifference; lost wages; denial of access to courts; loss of civil litigation value in Penaloza v. Streeval et al.; psychological damages including PTSD and hypervigilance caused by a documented, habitual, and systematic pattern of governmental abuse — physical assault, sexual abuse, retaliatory detention, and systematic denial of justice both during incarceration and during the revocation proceedings — these conditions are directly caused by Defendants' conduct and are compensable independent constitutional injuries regardless of the competency finding; and all other damages attributable to the failures of Directors Mauskopf and Conrad to exercise their statutory oversight authorities under 18 U.S.C. Section 3672. Carey v. Piphus, 435 U.S. 247 (1978); Memphis Community School District v. Stachura, 477 U.S. 299 (1986).

## VIII. NOTICE OF ADDITIONAL EVIDENCE

Movant is obtaining: (a) First Appearance before Magistrate Kent, October 11, 2023 (Doc. 2233); (b) December 20, 2023 hearing transcript (Docs. 2276, 2278) — competency motion granted without Movant's presence; (c) November 30, 2023 revocation hearing transcript (Doc. 2256) — Court Reporter Paul Brandell (517) 230-7507; (d) additional FOIA records from FBI, FBOP, and USMS; (e) vehicle accident chain of custody video.

## IX. DECLARATION

I, Matthew Abraham Penaloza, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief. All docket entries cited are from official court records in Case No. 1:12-CR-00132, Western District of Michigan. The OIG records referenced as Exhibit A are government-produced documents received pursuant to FOIA requests 26-OIG-065, 26-OIG-073, and 26-OIG-092, response dated February 12, 2026. The D.C. transcript referenced as Exhibit B is the certified official transcript from Case No. 23-MJ-00231, August 25, 2023, certified by Court Reporter Lisa K. Bankins RMR FCRR RDR. Register No. #16892-040 is referenced as a historical identifier only; I was discharged from all federal supervision on May 8, 2025 (Doc. 2457).

*Pro Se Notice: This Court is requested to construe this motion liberally. Haines v. Kerner, 404 U.S. 519 (1972). A pro se pleading, however inartfully drafted, must be held to less stringent standards than formal pleadings drafted by lawyers.*

**Signature:**

**Printed Name:**    Matthew Abraham Penaloza — Pro Se Movant

**Date Filed:**    May _7_, 2026